# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| THE GUN SHOP LLC AND | ) | |
| JILL MCCLELLAND, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:10CV01459MLM |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| JUSTICE, BUREAU OF ALCOHOL, | ) | |
| TOBACCO, FIREARMS AND | ) | |
| EXPLOSIVES | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the court is the Motion for Summary Judgment filed by Defendant United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("Defendant" or "ATF"). Doc. 13. Plaintiffs The Gun Shop and Jill McClelland (jointly, "Plaintiffs") have filed a Response. Doc. 21. Defendant has filed a Reply. Doc. 22. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). Doc. 11.

## STANDARD FOR SUMMARY JUDGMENT

The court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The substantive law determines which facts are critical and which are irrelevant.  Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.  See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247.  The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256.  "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987).  The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.  However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252.  With these principles in mind, the court turns to an analysis of Defendant's Motion.

**UNDISPUTED FACTS**[1]

Commencing in 1974, Plaintiff Jill McClelland ("Mrs. McClelland") operated Plaintiff The

Gun Shop ("The Gun Shop"), a firearms dealer located in New Melle, Missouri, with her husband,

James McClelland ("Mr. McClelland"). Def. Facts, ¶ 3[2]; Hr'g Tr., Def. Ex. A at 176.[3]   The Gun

Shop's most recent Application for License, ATF Form 7, dated March 29, 2007, lists Mr. and Mrs.

McClelland as The Gun Shop's owners. Hr'g Off. Dec., Def. Ex. B at 235 (citing Def. Ex.7).

Plaintiffs allege, in the matter under consideration that, in mid-2008, Mr. McClelland was diagnosed

with terminal cancer and unable to participate in any business activities of The Gun Shop and that,

at this time, Mrs. McClelland was left with all responsibilities for management of The Gun Shop and

with the responsibility of being the sole caregiver for her dying husband. Doc. 1, ¶ 5.   Mrs.

McClelland has testified that her husband had "always [been] the prime guy to go to" at The Gun

Shop; that she felt she needed help running The Gun Shop after her husband became sick; that she

hired someone whom she felt "knew the business" to help her; that, at some point, she realized she

made a mistake hiring this person and she told him she no longer needed his help; that after that Ann

---

[1]     The facts are undisputed unless otherwise stated.

[2]     Plaintiffs have not submitted a response to the ATF's Statement of Uncontroverted
Material Facts.  Local Rule 7-4.01(E) provides that all matters set forth in the moving party's
statement of uncontroverted material facts "shall be deemed admitted for purposes of summary
judgment unless specifically controverted by the opposing party."  Accordingly, all facts offered
by ATF have been admitted.  Nevertheless, only those facts supported by facts in the
administrative record have been deemed true. On Target Sporting Goods, Inc. v. Attorney
General of United States, 441 F. Supp. 2d 1049, 1050-51 (E.D. Mo. 2005), aff'd, 472 F.3d 572
(8th Cir. 2007).

[3]     All exhibits are identified by their designation in the administrative record, unless
otherwise stated.  Pages reference page numbers in the administrative record.

Layton helped her; and that she also had a part-time gunsmith helping her. Def. Ex. A at 182-84.

Plaintiff states that Mr. McClelland died on September 15, 2008, although Defendant disputes the exact date of his death.[4] Doc. 1, ¶ 6. Mrs. McClelland testified that, after her husband's death, she became the sole owner of The Gun Shop. Def. Ex. A at 184. Plaintiffs allege that Mr. McClelland's death left Mrs. McClelland in a "state of severe depression unable to concentrate, focus, organize or to fully communicate"; that while Mrs. McClelland had severe depression "a number of unintentional lapses occurred in the required record keeping of The Gun Shop"; that, six months after her husband's death, Mrs. McClelland corrected record keeping mistakes; that, nonetheless, based on a compliance inspection by an ATF Industry Operations Inspector, a Notice of Revocation of License issued for The Gun Shop; and that, by decision, dated July 19, 2010, the Final Notice of Revocation was upheld. Doc. 1, ¶¶ 6-9. See Def. Exs. C at 253-67, D at 268-76. In their Complaint, Plaintiffs seek review, by this court, of the hearing officer's decision.

As a dealer in guns and ammunition, The Gun Shop must possess a federal firearms license issued under the Gun Control Act of 1968 ("GCA"). The GCA is designed to keep firearms out of the hands of those not legally entitled to possess them. Def. Facts, ¶ 2. Since its inception in 1974, The Gun Shop has applied for, and received, three such licenses: in 1974, 1989, and 2007. Def. Ex. B at 234-36 (citing Def. Ex.7). In each license application, Mrs. McClelland was listed as either a "responsible person" or an owner of the store. Def. Facts, ¶ 3.

As a condition of its license, The Gun Shop is subject to intermittent compliance inspections conducted by ATF. After an inspection in 1981, The Gun Shop was cited for failure to obtain dates of birth from individuals who purchased ammunition. Def. Facts, ¶ 4. An inspection five years later,

---

[4] In any case, the exact date of his death is not relevant to the matter under consideration.

in 1986, revealed no violations. Def. Facts, ¶ 5. Next, in April 1988, The Gun Shop's license was not cited for any violations, although it was noted that eighteen copies of ATF Form 4473 contained errors. Def. Facts, ¶ 6.

In October 1989, an inspection of The Gun Shop's previous license was conducted and the licensee was not cited for any violations. Four violations, however, were noted upon the October 1989 inspection, including : (1) failure to maintain the licensee's acquisition and disposition book ("A&D Book"); (2) failure to obtain ATF Form 4473; (3) inaccurate completion of ATF Form 4473; and (4) failure to prepare a report for a multiple handgun sale. Def. Facts, ¶ 8 (citing Def. Ex. 7).

In July 1991, a compliance inspection of The Gun Shop's previous license was conducted. Pursuant to the July 1991 inspection the licensee was not cited for any violations but two violations were noted, including two instances where the licensee had completed ATF Form 4473 inaccurately and three instances where The Gun Shop failed to record firearm dispositions in its A&D Book. Def. Facts, ¶ 9 (citing Def. Ex. 7).

In September 1995, a compliance inspection was conducted of The Gun Shop's previous license and the licensee was not cited for any violations and one record keeping violation was disclosed and corrected. Def. Facts, ¶ 11 (citing Def. Ex. 7).

A compliance inspection was next conducted in June 2002 , which inspection resulted in the licensee's being cited for: (1) failure to record the disposition of 1199 repaired firearms in the licensee's A&D Book; (2) failure to record the disposition of 182 sold firearms in the licensee's A&D Book; (3) failure to comply with Illinois' waiting period for a firearm purchase on one occasion; (4) failure to obtain properly completed copies of ATF Form 4473 on ten occasions; and (5) failure to prepare a report of multiple sale on three occasions. Def. Facts, ¶ 12 (citing Def. Ex. 7).  Following

this inspection, ATF held a warning conference. Def. Facts, ¶ 12 (citing Def. Ex. 7). It is not clear whether Mrs. McClelland was present at this conference. A letter, dated June 24, 2002, from the Defendant's Director of Industry Regulations to Mr. McClelland states that Mrs. McClelland was in attendance at this meeting. Def. Ex. 7 at 348. Also, Matthew Corley, an ATF investigator, testified that Mrs. McClelland was present. Def. Ex. A at 39. On the other hand, Mrs. McClelland testified that she was present only at one conference, and as discussed below, it was clear she was present at a conference held in 2007. Def. Ex. A at 50, 176-77.

In September 2005 a compliance inspection was conducted of The Gun Shop's previous license. This inspection resulted in a citation for failure to record the disposition of 48 firearms in the licensee's A&D Book. As a result of the September 2005 compliance inspection another warning conference was held on December 6, 2005.[5] Def. Facts, ¶ ¶ 13-14 (citing Def. Ex 7).

As stated above, The Gun Shop submitted an application for a firearms license in March 2007, on which application Mr. and Mrs. McClelland were both listed as owners of the corporation. The new license was approved. During the period of April 25, 2007, through May 9, 2007, a compliance inspection of The Gun Shop's 2007 license was conducted. Def. Ex. 6 at 324. Pursuant to this inspection, the following citations were issued: (1) failure to obtain and document purchasers' identification on twelve occasions; (2) failure to obtain and record National Instant Criminal Background Check System ("NICS") information on fourteen occasions; (3) inaccurate completion of ATF Form 4473 on 443 occasions; (4) failure to report a multiple sale of handguns on one occasion; (5) failure to record the acquisition of one firearm in the licensee's A&D Book; and (5)

---

[5] The record does not reflect that Mrs. McClelland was present at the December 2005 conference, although ATF Investigator Corely testified that a "Green Card" indicated that she received the letter documenting the 2005 violations. Def. Ex. A at 42.

failure to record the disposition of two firearms in the licensee's A&D Book.[6] Def. Facts ¶ 15 (citing Def. Ex. 7). On May 9, 2007, upon the conclusion of the April/May 2007 inspection, Mrs. McClelland signed an acknowledgment that the ATF investigator had explained the agency's rules and procedures and that her questions surrounding these issues had been answered. Def. Facts, ¶ 16 (citing Def. Ex. A at 44). Specifically, the acknowledgment signed by Mrs. McCLelland reflects that the investigator explained the requirements of the regulations concerning the maintenance of The Gun Shop's acquisition and disposition record, 27 C.F.R. § 478.125(e), prohibited sales, 27 C.F.R. § 478.99, ATF Form 4473, 27 C.F.R. § 478.124, NICS requirements, 27 C.F.R. § 178.102, and reports of multiple sales, 27 C.F.R. § 478.126a. Def. Ex. 6 at 322. A warning conference was held on September 12, 2007. It is undisputed that Mrs. McClelland was present at this conference. Def. Facts, ¶ 15; Def. Ex. A at 46.

The Gun Shop's most recent inspection commenced on February 4, 2009. Def. Facts, ¶ 17. At a closing conference, ATF Industry Operations Investigator Matt Corley, who conducted the investigation, discussed the cited violations with Mrs. McClelland. Def. Facts, ¶ 18. The ATF issued a Notice of Revocation to The Gun Shop and Mrs. McClelland on July 10, 2009. Def. Facts, ¶ 19; Def. Ex.1 at 294. The Notice of Revocation listed eleven separate grounds for revocation, including: Ground 1, failure to record the acquisition of three firearms; Ground 2, failure to record the disposition of thirty-three firearms, with one "disposed" firearm located in inventory, and one failure to record the name and address or name and license number of the transferee; Ground 3, sale of a

---

[6]     There are minor discrepancies between ATF's Statement of Undisputed Material Facts and the report of violations. The court therefore, has made reference to the administrative record to determine the violations which were found by the ATF.

firearm to a possible prohibited person[7]; Ground 4, failure to contact NICS to conduct background checks on thirty-three occasions; Ground 5, failure to obtain ATF Form 4473 prior to making a transfer on thirty-three occasions; Ground 6, failure to obtain a properly executed ATF Form 4473 on thirteen occasions; Ground 7, failure to obtain identification documents prior to transferring a firearm on two occasions; Ground 8, failure to record information received from the NICS on ATF Form 4473 on thirty-two occasions; Ground 9, failure to sign and record the date of transfer on ATF Form 4473 on fifteen occasions; Ground 10, failure to complete other items on ATF Forms 4473, including failure to obtain the recertification signature and date (four times), failure to record the name and address of licensee and licensee's license number (three times), and failure to record the name and title of transferee (six times); and Ground 11, failure to report multiple handgun sales on four occasions. Def. Facts, ¶ 21; Def. Ex. C at 256-65.

Plaintiffs timely requested an administrative hearing to review the notice of revocation. Def. Facts, ¶ 22. A hearing was held on November 3, 2009. Mrs. McClelland and two employees of The Gun Shop testified. Mrs. McClelland was represented by counsel. At the hearing Mrs. McClelland did not challenge that the above cited mistakes had been made, although she provided reasons why she had failed to correctly complete the ATF form for multiple purchase of handguns and testified that she had not made mistakes intentionally. Def. Ex. A at 178-79. Mrs. McClelland also testified regarding her state of mind for the period commencing July 2008 in that she was "somewhat devastated" when she found out that her husband had cancer. Def. Ex. A at 181.

---

[7]     Two ATF Forms 4473 contained "yes" answers to questions relating to questions if the person had been "adjudicated as mentally defective or has ever been committed to a mental institution" and if the person had ever been "discharged from the Armed Forces under DISHONORABLE conditions." Def. Ex. 9 at 369, 372.

The hearing officer concluded, in regard to Grounds 1-3, that the licensee "did not provide any documentation or testimony during the hearing that would prove these allegations wrong"; in regard to Grounds 4, 5, 7, and 11, that the violations occurred; and in regard to Grounds 6, 8, 9, and 10, that the licensee did not dispute that these violations occurred. Def. Ex. B at 245-48. The hearing officer found that all violations, except Grounds 4 and 5, were committed willfully. As such, the hearing officer found that The Gun Shop had violated all of the enumerated regulations and that all violations, with the exception of the failure to contact NICS and the failure to obtain ATF Form 4473 prior to making a transfer, had been committed willfully. Def.'s Ex. B at 248-51. In particular, the Hearing Officer held:

> Although the hearing officer is extremely sympathetic to the terminal illness and ultimate passing of James Mc[Cl]elland, the fact remains that the majority of violations that resulted in the Notice of Revocation are violations that have been repeated by the licensee for many years. The fact that ATF held THREE WARNING CONFERENCES with the licensee demonstrates that the licensee has been given at least three opportunities to come into compliance. Unfortunately, the licensee has not made enough effort and improvement to establish that they can and will maintain their firearms records in accordance with Federal law and regulations.

Def. Ex. B at 251.

The hearing officer recommended that The Gun Shop's license be revoked. Def. Facts ¶¶ 22-24; Def. Ex. B at 251.

Based on the hearing officer's report and an independent review of the administrative record, ATF's Director of Industry Operations William L. Bowers ("DIO Bowers") issued a Final Notice of Revocation to the Plaintiffs. Def. Facts ¶ 26; Def. Ex. C at 253-67. In his findings, DIO Bowers concluded that Mrs. McClelland was familiar with the legal requirements imposed upon holders of

federal firearms licenses; that Mrs. McClelland had acted with plain indifference to, or with purposeful disregard of, the requirements of the law and regulations; and that Mrs. McClelland had committed all the enumerated violations willfully. Def. Ex. C at 265-66.

On August 9, 2010, Plaintiffs filed the Complaint in the matter under consideration, seeking de novo judicial review of ATF's revocation of the license. Def. Ex. D. ATF granted an extension on The Gun Shop's license until court proceedings have terminated. Def. Ex. E. Plaintiffs assert that ATF's decision failed to demonstrate that the violations were "willful" within the scope of the GCA; that Mrs. McClelland did not receive a full and fair hearing pursuant to 18 U.S.C. § 923 and the Due Process and Equal Protection Clauses of the U.S. Constitution; that the hearing officer failed to consider physician testimony surrounding Mrs. McClelland's physical, mental, and emotional distress following the death of her husband; that, because of this distress, Mrs. McClelland's mental state could not satisfy the GCA's mens rea requirement of "willfulness"; and that the hearing officer failed to consider The Gun Shop's history of compliance, which demonstrates a pattern of only minor violations, honest errors, and corrective actions. Doc. 1, ¶¶ 12-15. Additionally, Plaintiffs contend that the hearing officer failed to consider that ATF Form 4473 underwent "substantial and fundamental" changes in both form and format during the past several years; that these changes led to confusion about the form's proper execution; that the hearing officer failed to consider these alterations; and that ATF's failure to provide clear and unequivocal directions to licensees for filling out this form deprived Plaintiffs of due process, prior notice, and equal protection under the law. Doc. 1, ¶ 16. Plaintiffs request an interim order staying the revocation of The Gun Shop's license as well as an evidentiary hearing under 18 U.S.C. § 923(f) to support reversal of ATF's final decision.

## LEGAL FRAMEWORK and DISCUSSION

Under the GCA, "[t]he Attorney General may, after notice and opportunity for hearing, revoke any license issued under [18 U.S.C. § 923] if the holder of such license has willfully violated a provision of [the GCA] or any rule or regulation prescribed by the Attorney General under [the GCA] . . . ." 18 U.S.C. § 923(e) (2006). 18 U.S.C. § 923(f)(3) confers jurisdiction on this court to review the revocation of The Gun Shop's license revocation, de novo. "In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing." Id.

The court may grant summary judgment provided that no issues of material fact are in dispute. Sturdy v. Bentsen, 129 F.3d 122 (8th Cir. 1997) (unpublished table decision); Armalite, 544 F.3d at 647; see also On Target Sporting Goods, Inc. v. Attorney General of the United States, 472 F.3d 572, 575 (8th Cir. 2007) (per curiam) (allowing summary judgment for de novo review of ATF's refusal to approve a license under 18 U.S.C. § 923(d)(1)(C)); Fin & Feather Sport Shop, Inc. v. United States Treasury Dep't, 481 F. Supp. 800, 807 (D. Neb. 1979) (concluding that summary judgment is available under § 923(f)(3)).

By the statute's plain language, even a single willing violation can trigger ATF's power of revocation. See American Arms Int'l v. Herbert, 563 F.3d 78, 86 (4th Cir. 2009); General Store, Inc. v. Van Loan, 560 F.3d 920, 924 (9th Cir. 2009); Armalite, Inc. v. Lambert, 544 F.3d 644, 647 (6th Cir. 2008); Article II Gun Shop, Inc. v. Gonzales, 441 F.3d 492, 498 (7th Cir. 2006).

The ATF found that Mrs. McClelland had violated numerous federal regulations, including 27 C.F.R. § 478.125(e)[8] (failure to record the acquisition or disposition of firearms), 27 C.F.R. §

---

[8]     Both Grounds 1 and 2 were based on 27 C.F.R. § 478.125(e). Thus, while there were eleven grounds for revocation, there were only ten federal regulations involved.

478.99(c) (transferring firearms to a person who indicated that he is prohibited from possessing firearms), 27 C.F.R. § 478(a) (failure to contact NICS and conduct a background check prior to the transfer of a firearm), 27 C.F.R. § 478.124(a) (failure to obtain a Form 4473 from the transferee prior to making a transfer), 27 C.F.R. § 478.124(c) (failure to obtain a properly executed Form 4473), 27 C.F.R. § 478.124(c)(3)(i) (failure to examine and record an identification document presented by firearm purchasers on Form 4473), 27 C.F.R. § 478.124(c)(3)(iv) (failure to record information received from NICS on Form 4473), 27 C.F.R. § 478.124(c)(5) (failure to sign and record the date of transfer on Form 4473), 27 C.F.R. § 478.21(a) (failure to obtain recertification signature and date, failure to record name and address of licensee and licensee's license number, and failure to record name and title of transferee), and 27 C.F.R. § 478.126(a) (failure to prepare and file a report of multiple sales). Def.'s Ex. 1 at 295-99.

During the course of the revocation proceedings Mrs. McClelland did not dispute these record keeping errors. Def. Ex. B at 237-42; Def. Ex. 1 at 281-88. Likewise, before this court she does not dispute that these errors were made. Rather, Plaintiffs contend that Mrs. McClelland never "willfully" violated the underlying regulations, as required by 18 U.S.C. § 923(e). Doc. 21 at 1.

Unlike criminal law, a demonstration of willfulness in the context of the GCA does not require proof of a "bad purpose" by the licensee. On Target Sporting Goods, 472 F.3d at 575 (citing Lewin v. Blumenthal, 590 F.2d 268, 269 (8th Cir. 1979) (per curiam)). Rather, the government "need only establish that a licensee knew of its legal obligation and 'purposefully disregarded or was plainly indifferent to the record-keeping requirements.'" On Target Sporting Goods, 472 F.3d at 575 (quoting Lewin, 590 F.2d at 269). Thus, to establish that ATF's revocation of Mrs. McClelland's license was authorized by law for purposes of summary judgment, the ATF must demonstrate that

the undisputed facts establish both that Mrs. McClelland was aware of her obligations under the GCA and that she either "purposefully disregarded" or was "plainly indifferent" to these obligations.

A combination of violations and warnings can establish the licensee's knowledge of her legal obligations. See Sturdy, 129 F.3d at 122 (finding awareness after two inspections revealing violations, a warning letter, and a warning conference); Breit & Johnson Sporting Goods, Inc. v. Ashcroft, 320 F. Supp. 2d 671, 679 (N.D. Ill. 2004) (history of violations during three compliance inspections with two warning conferences sufficient to establish willingness). In terms of awareness, eight of the violations recorded during ATF's 2009 inspection of The Gun Shop were repeat offenses. In this regard, ATF had previously cited The Gun Shop or noted violations for: (1) failure to record the acquisition of firearms in 1989, 2002, 2005, and 2007, with warning conferences in 2002, 2005, and 2007; (2) failure to record or properly record the disposition of firearms in 1989, 1991, 2002, 2005, and 2007, with warning conferences in 2002, 2005, and 2007; (3) failure to obtain a properly executed ATF Form 4473 in 1988, 1989, 1991, 2002, and 2007, with a warning conference in 2007; (4) failure to examine and record an identification document presented by firearm purchasers in 2007, with a warning conference; (5) failure to record information received from the NICS on ATF Form 4473 in 2007, with a warning conference; (6) failure to sign and record date of transfer on ATF Form 4473 in 2002 and 2007, with warning conferences each time; (7) failure to obtain recertification signature and date, failure to record name and address of licensee and licensee's license number, and failure to record name and title of transferee in 2007, with a warning conference; and (8) failure to prepare and file a report of multiple sales in 2002 and 2007, with warning conferences each time. Def. Ex. 6 at 324-28; Def. Ex. 7 at 335-36, 339-40, 343-44, 348-51, 357.

To further establish Mrs. McClelland's knowledge of her legal obligations the ATF notes Mrs. McClelland's presence at the 2007 warning conference. As stated above, many of the violations found in 2007 were the same as violations found in 2009. The ATF also notes that after ATF conducted the 2007 inspection, Mrs. McClelland signed a form stating that her questions surrounding ATF rules and procedures had been answered. The record reflects that the ATF investigator specifically explained to Mrs. McClelland, in May 2007, the requirements of regulations concerning, among other things, the maintenance of acquisition and disposition records, prohibited sales, ATF Form 4473, NICS requirements, and reports of multiple sales, and that Mrs. McClelland acknowledged that she understood these requirements. Significantly, violations of these regulations were subsequently found during the 2009 inspection. Because numerous violations found in 2007 were also found in 2009, because Mrs. McClelland attended at least the 2007 warning conference with the ATF, and because many regulations for which violations were found in 2009 were specifically explained to Mrs. McClelland in 2007, the court finds that the undisputed facts establish that Mrs. McClelland had sufficient awareness of her legal obligations under the GCA. See On Target Sporting Goods, 472 F.3d at 573-75 (finding awareness under the GCA when owner had undergone two previous inspections and signed a form titled "Review of Federal Firearm Regulations"); Augustson v. Holder, 728 F. Supp. 2d 1279, 1286 (D.N.M. 2010) (finding that combination of two warning conferences and a signed acknowledgment established licensee's awareness); Best Loan Co. v. Herbert, 601 F. Supp. 2d 749, 755 (E.D. Va. 2009) (finding that two signed acknowledgment forms established knowledge).

Examining Mrs. McClelland's actions for "purposeful disregard" or "plain indifference" further establishes the willfulness of the 2009 violations. Evidence of a "repeated failure" to follow

record keeping requirements can demonstrate that the licensee exhibited plain indifference under the GCA. On Target Sporting Goods, 472 F.3d at 575; Sturdy, 129 F.3d at 122; see also Borchardt Rifle Corp. v. Cook, 727 F. Supp. 2d 1146, 1163 (D.N.M. 2010) ("Courts have consistently found that willfulness under the Gun Control Act may be inferred based upon circumstantial evidence of knowledge of the requirements and repeat violations."). The government can demonstrate a licensee's willfulness through a pattern of errors over time. See, e.g., Fin & Feather Sport Shop, 481 F. Supp. at 807.

It is undisputed that between 1974 and 1995 The Gun Shop committed a series of primarily isolated violations and that, commencing in 2002, The Gun Shop's violations escalated in both type and frequency. In 2002, ATF discovered almost 1400 separate record keeping errors, spread across six categories of violations. In 2005, The Gun Shop failed to record the disposition of firearms in its A&D Book in forty-eight separate instances. An inspection two years later established 470 record keeping errors across five categories. Finally, in 2009, the ATF found a total of 183 violations in eleven different categories.

Thus, the undisputed facts establish that during three of the four investigated compliance periods in the last decade, The Gun Shop has committed violations ranging from the hundreds to the thousands. These inspections uncovered violations concerning a number of different federal regulations. Even the least egregious inspection results in 2005 revealed forty-eight failures to record the disposition of firearms in the store's A&D Book. Cf. On Target Sporting Goods, 472 F.3d at 573-75 (justifying nonrenewal for failure to account for the disposition of forty-six firearms and sales to unauthorized purchasers). Furthermore, The Gun Shop had committed eight of the eleven 2009 violations in previous years, sometimes noted during as many as five separate inspections. As such,

the court finds that the undisputed facts establish "repeated failure" demonstrating that Mrs. McClelland exhibited plain indifference under the GCA. On Target Sporting Goods, 472 F.3d at 575; Sturdy, 129 F.3d at 122. Combined with Mrs. McClelland's awareness of her legal obligations under the GCA, the court finds that the undisputed facts establish willful violations necessary to revoke The Gun Shop's federal firearms license. See On Target Sporting Goods, 472 F.3d at 575.

Where a defendant demonstrates the non-existence of any material issue of fact, to defeat summary judgment, a plaintiff "must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue." On Target Sporting Goods, 441 F. Supp. 2d at 1050. A plaintiff "may not rest on the allegations in [her] pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists." Id. See also Anderson, 477 U.S. at 256 ("The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict.").

Plaintiffs state their intention to offer additional evidence about Mrs. McClelland's state of mind in the months surrounding her husband's death at trial. However, they have failed, in response to the Motion for Summary Judgment, to provide any evidence to rebut the undisputed facts. Plaintiffs suggest that testimony from Mrs. McClelland's longtime physician would demonstrate that she suffered intense emotional distress during the compliance period covered by the ATF's inspection. A party's assertion that she "is prepared to offer additional factual evidence does not create a disputed issue of material fact precluding the granting of summary judgment." Fin & Feather Sport Shop, 481 F. Supp. at 807. Plaintiffs were required, therefore, to offer tangible evidence rather than rely on unsubstantiated claims. Plaintiffs, moreover, have failed to suggest why they did not submit,

at the hearing or in response to the Motion for Summary Judgment, at least, an affidavit from Mrs. McClelland's physician.

In any case, the court notes that no reviewing court has reversed an ATF decision to revoke a federal firearms license on the grounds of mental incapacity.[9] See, e.g., Sturdy, No. 4:94CV1472 CDP (E.D. Mo. Feb. 26, 1997), aff'd 129 F.3d 122 (8th Cir. 1997) (rejecting petitioner's claim of attention deficit disorder because he successfully operated firearm store for over a decade). Yet even assuming, arguendo, that this could be a valid defense, as stated above, Plaintiffs have not furnished an affidavit from Mrs. McClelland's physician or any other evidence to support their position

---

[9]      Without deciding this issue, the court is nevertheless mindful of several considerations. To begin, in civil law, willfulness is frequently equated with recklessness. See Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 57-58 (2007). Under the common law's objective standard for recklessness,

> [an] actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Restatement (Second) of Torts § 500 (1965), quoted in Safeco Ins., 551 U.S. at 69. At the same time, "[u]nless the actor is a child, his insanity or other mental deficiency does not relieve the actor from liability for conduct which does not conform to the standard of a reasonable man under like circumstances." Restatement (Second) of Torts § 283B. Furthermore, criminal law claims of diminished responsibility are typically reserved to negate specific intent crimes. See McMullin v. Nix, 909 F.2d 314, 315-16 (8th Cir. 1990). The GCA, however, provides no requirement of a bad purpose. Thus, any blend of the concepts of civil and criminal willfulness points away from permitting a defense of diminished capacity.

Finally, "the principal purpose of the federal gun control legislation was to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background or incompetency.'" Fin & Feather Sport Shop, 481 F. Supp. at 806 (quoting S. Rep. No. 1501 (1968)) (emphasis added). Accordingly, policy reasons weigh against having the court read into the statute a dispensation for firearms dealers who, because of their own diminished capacity, might sell guns to unqualified individuals. Accordingly, each application for a federal firearms license filled out by The Gun Shop questioned whether the licensee had ever been adjudicated as mentally defective or committed to any mental institution. See Def. Ex. 6 at 321; Def.'s Ex. 7 at 331, 338.

regarding Mrs. McClelland's state of mind. Rather, Plaintiffs offer a single reference to Mrs. McClelland's testimony at the administrative hearing where she testified that, "in the two years from when I was audited last until Jack got sick, I made five mistakes and every mistake on there is after my [husband] got sick. I can understand my frame of mind." Def. Ex. A at 186. Significantly, Mrs. McClelland did not testify as to whether she was diagnosed by a mental health professional. This brief testimony, by itself, is insufficient to suggest that Mrs. McClelland was operating the store with diminished mental capacity. Importantly, "[a] mere 'scintilla of evidence' is insufficient to defeat summary judgment." Brunsting v. Lutsen Mountains Corp., 601 F.3d 813, 820 (8th Cir. 2010) (quoting Anderson, 477 U.S. at 252). While it is certainly natural that Mrs. McClelland was distraught after the loss of her husband, Plaintiffs have failed to offer any firm evidence to suggest that her distress left her at diminished mental capacity for a period of several consecutive months, during which she continued to operate The Gun Shop. As a result, the court finds that Plaintiffs have failed to raise a genuine issue of material fact surrounding Mrs. McClelland's mental state.

Additionally, the court finds without merit Plaintiffs' allegation that they did not receive a full and fair hearing before the hearing officer based on the absence of Mrs. McClelland's physician. Again, Plaintiffs "may not rest on the allegations in [their] pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists." On Target Sporting Goods, 441 F. Supp. 2d at 1050. Plaintiffs only offer a bare assertion that Mrs. McClelland's physician did not provide testimony during the hearing about her physical and mental condition. It is neither asserted, nor shown by evidence that Mrs. McClelland requested to have her physician present at the hearing and that she was denied this opportunity. Further, the administrative record makes it clear that neither Mrs. McClelland nor her counsel mentioned the physician's absence

during the hearing. In any case, Mrs. McClelland does not suggest that she was deprived of proper notice of the hearing, at which she was represented by counsel, testified herself, and presented two employee witnesses on her behalf. As a result, the court finds that the undisputed facts establish that Mrs. McClelland was not deprived of full and fair hearing with an opportunity to present witnesses.

To the extent Plaintiffs claim that the violations were either minor, honest errors, or corrected afterward in good faith, the GCA does not provide a dispensation for "minor" errors. The statute requires only a violation of *any* rule or regulation for revocation. 18 U.S.C. § 923(e) (2006). As a result, "[t]he revocation provision applies regardless of whether a firearms dealer's failure to comply with the Act actually results in illegal possession or usage of a firearm or an inability to track a firearm that has been sold." Article II Gun Shop, 441 F.3d at 498. Moreover, as previously discussed, the GCA does not require a "bad purpose." See On Target Sporting Goods, 472 F.3d at 575 (citing Lewin, 590 F.2d at 269). As a counterbalance to this lessened burden on the government, "'a single, or even a few, inadvertent errors' [do] not amount to a 'willful' violation. At some point, however, a repeated failure to comply with known regulations can move a licensee's conduct from inadvertent neglect into reckless or deliberate disregard (and thus willfulness) . . . ." American Arms Int'l, 563 F.3d at 85 (quoting RSM, Inc. v. Herbert, 466 F.3d 316, 322 (4th Cir. 2006)) (internal citation omitted). The sheer volume of errors committed at The Gun Shop moves its violations out of the realm of "inadvertent neglect" to the realm of willfulness. See id. Finally, "after-the-fact efforts to correct the specific violations . . . are irrelevant to the issue of willfulness at the time the errors occurred." Sturdy, 129 F.3d at 122 (citing Cucchiara, 652 F.2d at 30). Although Mrs. McClelland exhibited willingness to remedy errors, the standard for revocation under the GCA considers only the errors themselves and not the store's post hoc modifications. See id.

Finally, in regard to violations relating to the improper execution of ATF Form 4473, Plaintiffs claim that certain revisions to ATF Form 4473 led to confusion in the proper execution of the Form. This argument is unavailing as the undisputed facts establish that there were numerous violations other than those related to ATF Form 4473. Courts are in agreement that only a single willful violation is sufficient to revoke a federal firearms license. See, e.g., General Store, Inc., 560 F.3d at 924; Armalite, 544 F.3d at 647; Article II Gun Shop, 441 F.3d at 498 (stating that GCA does not allow a de minimis number of violations); Augustson, 728 F. Supp. 2d at 1285. Even if all of the ATF Form 4473 errors committed by The Gun Shop could be attributed to confusion regarding the proper execution of this form, multiple violations nevertheless remain that have nothing to do with ATF Form 4473. For example, the 2009 inspection noted failures to record information within the store's A&D Book and failures to file a report of multiple sales, both of which obligations exist independently of ATF Form 4473's purported changes. These were violations that The Gun Shop had committed in previous years as well, and both were involved in the 2007 warning conference that Mrs. McClelland attended. Any issues that may surround ATF Form 4473 cannot negate The Gun Shop's other record keeping errors. As a result, the court need not address Plaintiffs' due process, prior notice, and equal protection claims regarding ATF Form 4473. See General Store, Inc., 560 F.3d at 924; Armalite, 544 F.3d at 647; Article II Gun Shop, 441 F.3d at 498.

Accordingly, although "[i]t may be admitted that de novo trial is authorized under the statute, [] no useful purpose is served by a trial unless there is at least one genuine issue of material fact to be tried." Fin & Feather Sport Shop, 481 F. Supp. at 807 (quoting Mayesh v. Schultz, 58 F.R.D. 537, 539 (S.D. Ill. 1973)); see also Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, 348 F. Supp. 2d 1299, 1307 (S.D. Ala. 2004) ("Where a plaintiff fails to come forward

with genuine issues of material fact in a § 923(f) appeal, it is unnecessary to hold an evidentiary hearing before ruling on a Rule 56 motion."); <u>Breit & Johnson Sporting Goods</u>, 320 F. Supp. 2d at 673 ("Absent genuine issues of material fact, a court may properly grant summary judgment without an evidentiary hearing."); <u>DiMartino v. Buckles</u>, 129 F. Supp. 2d 824, 827 (D. Md. 2001) ("The reviewing court can grant summary judgment without conducting an evidentiary hearing if no genuine issues of material fact exist.").  Plaintiffs have failed to submit evidence to the court to establish that there are genuine issues of material fact sufficient to withstand summary judgment.  As such, the court finds that there are no genuine issues of material fact; that the ATF has established that the license of The Gun Shop was revoked in accordance with the applicable statutes and case law; that no evidentiary hearing is necessary; and that summary judgment should be granted in the ATF's favor.


## CONCLUSION

The court finds that the undisputed facts establish that Mrs. McClelland willfully violated regulations applicable to The Gun Shop's maintaining its federal firearms license.  The court further finds that the undisputed facts establish that Plaintiffs were provided with a full and fair hearing.  Because there are no genuine issues of material fact, the court additionally finds that Plaintiffs' request for an evidentiary hearing under 18 U.S.C. § 923(f)(3) should be denied.  In conclusion, the court finds that the ATF was authorized to revoke The Gun Shop's license under 18 U.S.C. § 923(e) and, therefore, summary judgment should be granted in Defendant's favor.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Defendant U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives is **GRANTED**; Doc. 13.

**IT IS FURTHER ORDERED** that a Judgment incorporating this Memorandum Opinion shall issue on this same date.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this <u>3rd</u> day of June, 2011.